O



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| NORMAN MILLAR COBB, | ) | Case No. CV 14-0655 RNB |
| Plaintiff, | ) | |
| vs. | ) ) ) | ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS |
| CAROLYN COLVIN, Acting Commissioner of Social Security, | ) ) | |
| Defendant. | ) | |

Plaintiff filed a Complaint herein on February 4, 2014, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income benefits. In accordance with the Court's Case Management Order, the parties filed a Joint Stipulation on October 9, 2014. Thus, this matter now is ready for decision.[1]

---

[1] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the administrative record ("AR"), and the Joint Stipulation ("Jt Stip") filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. §

(continued...)

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues that plaintiff is raising as the grounds for reversal and remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") made a proper step two determination.

2. Whether the ALJ properly considered the opinion of plaintiff's treating physician.

3. Whether the ALJ made a proper adverse credibility determination with respect to plaintiff's subjective symptom testimony.

4. Whether the ALJ made a proper adverse credibility determination with respect to the lay witness statement.

**DISCUSSION**

For the reasons discussed hereafter, the Court concurs with the Commissioner that reversal is not warranted based on the ALJ's alleged failure to make a proper adverse credibility determination with respect to plaintiff's subjective symptom testimony, or based on the ALJ's alleged failure to make a proper adverse credibility determination with respect to the lay witness statement, or based on the ALJ's alleged failure to properly consider the treating physician's opinion. However, the Court is unable to affirm the ALJ's step two determination because the Court concurs with plaintiff that the ALJ failed to properly consider evidence of plaintiff's meralgia paresthetica.

//
//
//

---

[1](...continued)
405(g).

A. **Reversal is not warranted based on the ALJ's alleged failure to make a proper adverse credibility determination with respect to plaintiff's subjective symptom testimony.**

Disputed Issue Three is directed to the ALJ's adverse credibility determination with respect to plaintiff's subjective symptom testimony. (See Jt Stip at 20-28.)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). Under the "Cotton test," where as here the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).

Here, plaintiff testified that he last worked in December 2008, when he was "let go due to lack of production." (See AR 61.) He also testified that he can no longer work because of "five areas that are wrong with me": upper back pain, shoulder soreness, lower back pain, leg/calf pain, and a pinched nerve in his upper right thigh. (See AR 64-66.) He also testified that on account of these conditions, he had trouble walking and was limited to standing for 15-20 minutes at a time and sitting for 30-45 minutes at a time. (See AR at 64-66, 68.) He also testified that his daily activities included laundry, light vacuuming, light cooking, and shopping. (See AR 75-76; see also AR 268, 269.)

The ALJ determined that, although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's

3

statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. (See AR 39-40.) As support for this adverse credibility determination, the ALJ stated four reasons. (See AR 40.) The Court finds that, although one of the ALJ's proffered reasons was legally insufficient to support his adverse credibility determination, the error was harmless because the other three reasons were legally sufficient.

One of the reasons stated by the ALJ was that plaintiff's daily activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (See AR 40.) The ALJ specifically noted that plaintiff reported no problems with his personal care, an ability to perform light household chores such as vacuuming and preparing simple meals, and an ability to go outside alone, go shopping, and take public transportation. (See AR 40; see also AR 75-76, 268, 269.) In general, a claimant's statements about his daily activities "may be grounds for discrediting a claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012). Here, however, the Court finds that this was not a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination because the ALJ ignored the full context of plaintiff's statements about his daily activities, which indicated that he performed them on a limited basis with help and rest. Specifically, plaintiff stated that he performs chores for 45-60 minutes before he takes a break, and that he requires help for heavy tasks; he also testified that he limits his vacuuming to one room at a time, limits his cooking to use of the microwave, and limits his shopping to 30 minutes at a time. (See AR 75-76, 268.) Plaintiff's statements about his activities, considered in their full context, do not establish that he exaggerated his symptoms. See Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014) (ALJ improperly relied on evidence of claimant's daily activities for adverse credibility determination where claimant stated she performed only

4

limited activities, sometimes with help); Reddick v. Chater, 157 F.3d 715, 722-23 and n.1 (9th Cir. 1998) (same where ALJ did not properly consider claimant's statements about her daily activities in full context, which indicated claimant performed them with weakness, fatigue, and periodic rest).

Another reason for the ALJ's adverse credibility determination was that plaintiff's "allegedly disabling impairments have been present for a number of years, and there is minimal evidence to indicate a change in the level of severity of these impairments after [his] alleged onset date." (See AR 40.) The ALJ specifically noted that plaintiff had alleged back pain for the previous 15 years, right thigh pain for the previous 8 years, and that he also alleged a history of diabetes, hypertension, and high cholesterol. (See AR 40; see also AR 324, 357.) The ALJ also specifically noted that plaintiff's degenerative disc disease had been noted as "only mild to moderate, with little evidence of stenosis or nerve root compression." (See AR 40; see also AR 382-85.) The ALJ concluded that since these impairments did not prevent plaintiff from working previously, it was strongly suggested that they would not currently prevent work. (See AR 40.) Preliminarily, the Court notes that, contrary to the ALJ's specific finding that there was "little evidence of stenosis or nerve root compression," an MRI from 2011 evidenced "stenosis, moderate to severe, on the right side" of plaintiff's lumbar spine. (See AR 382.) Nonetheless, the Court finds that the crux of the ALJ's reasoning – that plaintiff's longstanding impairments would not currently prevent him from working because he had previously been able to work despite them – was supported by substantial evidence. Indeed, the record reflects that plaintiff worked for several years despite his longstanding impairments. (See AR 69, 324, 718.) The Court therefore finds that this was a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination. See Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (claimant's work as personal caregiver for two years belied her claim of debilitating respiratory illness).

Another reason provided by the ALJ for his adverse credibility determination was that plaintiff "may have stopped working for reasons other than his condition." (See AR 40.) The ALJ specifically noted plaintiff's testimony that he was "let go" from his sales position due to "lack of production" and plaintiff's statement to an examining physician that he was "laid off because business was slow." (See AR 40; see also AR 61, 333.) The Court finds that this also was a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination. See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly discounted claimant's credibility after finding that claimant stopped working because he had been laid off); see also Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (same where claimant stopped working because he had a large financial reserve); Harrelson v. Astrue, 273 Fed. Appx. 632, 634 (9th Cir. 2008) (now citable for its persuasive value per Ninth Circuit Rule 36-3) (same where claimant stopped working because of religious reasons).[2]

Another similar reason provided by the ALJ for his adverse credibility determination was that plaintiff told an examining psychiatrist that "he can work but is unable to because of the loss of his driver's license." (See AR 40; see also AR 335.) The Court finds that this was a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination. See Berry v. Astrue, 622 F.3d 1228, 1235 (9th Cir. 2010) (ALJ properly discounted claimant's

---

[2] The Court notes that the record includes a letter from plaintiff's last supervisor suggesting that, although "we could never be sure," plaintiff's back problem also could have had an impact on the company's decision to terminate plaintiff's employment. (See AR 295.) Given the letter's equivocal tone, the Court finds that it does not conclusively undermine the ALJ's conclusion, based on his interpretation of the evidence on the whole, that plaintiff was laid off for business reasons. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

credibility where he stated his willingness to continue working). Although plaintiff contends that this statement, made to a psychiatrist, was merely an expression of his belief that he had a mental, but not physical, ability to work (see Jt Stip at 22), there is no clear evidence that the statement was made with that condition (see AR 335). At the very least, it was rational for the ALJ to interpret plaintiff's statement as an expression of his unconditional belief that he could work, and it therefore must be upheld despite plaintiff's contrary interpretation. See Burch, 400 F.3d at 679.

In sum, the Court finds that even if the ALJ did err in relying on one of his four stated reasons in support of his adverse credibility determination, the error was harmless because the ALJ's other three reasons and ultimate adverse credibility determination were supported by substantial evidence. See Carmickle v. Comm'r Social Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (holding that ALJ's reliance on two invalid reasons in support of adverse credibility determination was harmless error where remaining reasons were adequately supported by substantial evidence).

**B.    Reversal is not warranted based on the ALJ's alleged failure to make a proper adverse credibility determination with respect to the lay witness statement.**

Disputed Issue Four is directed to the ALJ's alleged failure to properly consider the testimony of plaintiff's brother, Jack Cobb. (See Jt Stip at 28-32.)

The law is well-established in this Circuit that lay witness testimony as to how a claimant's symptoms affect the claimant's ability to work is competent evidence and cannot be disregarded without providing specific reasons germane to the testimony rejected. See, e.g., Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); Smolen, 80 F.3d at 1288-89; Dodrill, 12 F.3d at 919.

Here, Mr. Cobb completed a "Function Report - Adult - Third Party" describing plaintiff's activities and limitations. (See AR 249-56.) In the report, Mr.

7

Cobb stated that plaintiff's activities included watching television, reading, doing minimal yard work, preparing simple meals, doing laundry, cleaning his room, going outside, using public transportation, shopping for groceries, going out alone, visiting family and friends occasionally, and attending diversion and AA meetings. (See AR 250-53.) Mr. Cobb also stated that plaintiff's shoulder problem limits his lifting ability and that his leg problem limits him to standing for approximately 20 minutes at a time and walking for limited distances. (See AR 249.)

The ALJ found that Mr. Cobb's statements were "partially credible" and credited the portion of Mr. Cobb's report describing plaintiff's daily activities because they were "not that limited, which is not inconsistent with the determination herein." (See AR 41.) The ALJ did not credit any of the other portions of Mr. Cobb's report and provided no supporting reasons.

The Court finds that the ALJ erred by failing to properly address Mr. Cobb's statements on the whole, particularly his statements that plaintiff could perform limited lifting, could stand for approximately 20 minutes at a time, and walk for limited distances. Nonetheless, the Court finds that the ALJ's error was harmless because one of the ALJ's reasons for rejecting plaintiff's testimony applied equally well to Mr. Cobb's virtually identical testimony about plaintiff's limitations. See Molina v. Astrue, 674 F.3d 1104, 1117-18 (9th Cir. 2012) ("Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to lay witness testimony," the ALJ's failure to discuss the lay witness testimony may be harmless error). As noted, the ALJ provided three legally sufficient reasons for rejecting plaintiff's subjective symptom testimony: plaintiff may have stopped working for reasons other than his condition, plaintiff stated that he can work, and plaintiff's impairments would not currently prevent him from working because he had previously worked with them. Although the first two reasons appear to be particular to plaintiff and therefore inapposite to Mr. Cobb's statements, the third reason for

rejecting plaintiff's subjective symptom testimony applied equally well to Mr. Cobb's statements. In other words, since plaintiff's longstanding impairments did not prevent him from working previously, it was strongly suggested that they would not currently prevent work.

### C. Reversal is not warranted based on the ALJ's alleged failure to properly consider the opinion of plaintiff's treating physician.

Disputed Issue Two is directed to the ALJ's rejection of the opinion of Dr. Okimoto, plaintiff's treating physician. (See Jt Stip at 9-19.)

The law is well established in this Circuit that a treating physician's opinions are entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996); Baxter v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991). Where, as here, the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. See, e.g., Reddick, 157 F.3d at 725 ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

//

Here, Dr. Okimoto submitted two opinions in questionnaire form that the ALJ considered. (See AR 41.) First, in May 2012, Dr. Okimoto completed a "Medical Source Statement - Physical" describing plaintiff's limitations from his lumbar disc disease, back pain, and meralgia parasethetica. (See AR 705-06.) Dr. Okimoto opined that plaintiff was limited to lifting 20 pounds occasionally and 10 pounds frequently, standing and/or walking for less than 2 hours in an 8 hour workday, and sitting for 3-4 hours in an 8 hour workday with hourly breaks. (See AR 705.) Second, in July 2012, Dr. Okimoto completed a "Disorders of the Spine Treating Physician Data Sheet" describing plaintiff's limitations from his back condition. (See AR 709-14.) Dr. Okimoto opined that plaintiff was limited to lifting 20 pounds occasionally and less than 10 pounds frequently, and standing and/or walking for 15 minutes at a time; he also opined, however, that plaintiff could walk without an assistive device. (See AR 712, 713.)

The ALJ gave significant weight only to the portions of Dr. Okimoto's opinions indicating that plaintiff could lift and or carry 20 pounds occasionally and would not need an assistive device for ambulation. (See AR 42.) The ALJ did not credit the other portions of Dr. Okimoto's opinions for four reasons. (See AR 41-42.)

One of the reasons stated by the ALJ was that Dr. Okimoto did not provide a date for when plaintiff's limitations began. (See AR 42.) The Court finds that this was not a legally sufficient reason on which the ALJ could properly rely to partially credit Dr. Okimoto's opinions. Nowhere in the opinions, which were in questionnaire form, is there a question asking Dr. Okimoto to provide a date for when plaintiff's limitations began. (See AR 705-06, 709-14.) If the ALJ thought he needed this information in order to properly evaluate Dr. Okimoto's opinions, he could have recontacted Dr. Okimoto. See Smolen, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of Dr. Hoeflich's opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.").

Another reason stated by the ALJ was that Dr. Okimoto appeared "to have relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to accept as true most, if not all, of what claimant reported." (See AR 41.) In general, "[a]n ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." Tommasetti, 533 F.3d at 1041. Here, however, the record reflects that Dr. Okimoto's opinions were based more heavily on Dr. Okimoto's independent tests and clinical observations than on plaintiff's self-reports. (See AR 662, 664, 667, 670, 711, 716-18.) The Court therefore finds that this was not a legally sufficient reason on which the ALJ could properly rely to partially credit Dr. Okimoto's opinions. See Ghanim, 763 F.3d at 1162 ("[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.") (citing Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1199 (9th Cir. 2008)).

Another reason stated by the ALJ was that Dr. Okimoto had prescribed "minimal and conservative treatment." The ALJ specifically noted that Dr. Okimoto did not recommend surgery, injections, or physical therapy for plaintiff's back, and even noted that plaintiff only just recently began taking a pain medication. (See AR 41; see also AR 710.) The Court finds that this was a legally sufficient reason on which the ALJ could properly rely to not fully credit Dr. Okimoto's opinion. See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (treating physician's opinion that claimant was disabled was properly rejected where he had prescribed conservative course of treatment); see also Matthews v. Shalala, 10 F.3d 678, 680 (ALJ properly rejected allegation of disabling back impairment where treating physician did not consider claimant to be surgery candidate).

The final reason stated by the ALJ was that Dr. Okimoto's opinions were inconsistent with the objective medical evidence, which reflected that (1) plaintiff had only mild to moderate degenerative disc disease (which had been described as

"slight" and evidenced only by "disc space narrowing"); and (2) there was little change, as reflected in Dr. Okimoto's treatment notes, in plaintiff's condition from the initial diagnosis that was given years ago. (See AR 41-42; see also AR 385, 706.) The Court finds that this also was a legally sufficient reason on which the ALJ could properly rely to not fully credit Dr. Okimoto's opinions. See Tommasetti, 533 F.3d at 1041 (ALJ properly rejected treating medical opinion that was "inconsistent with the medical records"); see also Valentine v. Comm'r of Social Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009) (holding that contradiction between a treating physician's opinion and his treatment notes constitutes a specific and legitimate reason for rejecting the treating physician's opinion); Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding that contradiction between treating physician's assessment and clinical notes justifies rejection of assessment); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that treating physician's opinion that was "unsupported by rationale or treatment notes, and offered no objective medical findings" to support diagnoses was properly rejected); Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995) (holding that contradiction between doctor's treatment notes and finding of disability was valid reason to reject treating physician's opinion).

In sum, although the ALJ proffered two legally insufficient reasons for not fully crediting Dr. Okimoto's opinions, the error was harmless because the ALJ also proffered two independent, legally sufficient reasons supported by substantial evidence. See Stout v. Commissioner of Social Security, 454 F.3d 1050, 1055 (9th Cir. 2006) (an ALJ's error is harmless when the error is inconsequential to the ultimate non-disability determination); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rules applies to review of administrative decisions regarding disability); see also Howell v. Commissioner Social Sec. Admin., 349 Fed.

Appx. 181, 184 (9th Cir. 2009) (now citable for its persuasive value per Ninth Circuit Rule 36-3) (ALJ's erroneous rationale for rejecting treating physician's opinion was harmless because the ALJ otherwise provided legally sufficient reasons to reject opinion) (citing Stout, 454 F.3d at 1054); Donathan v. Astrue, 264 Fed. Appx. 556, 559 (9th Cir. 2008) (ALJ's erroneous characterization of treating physicians' opinions was harmless "because the ALJ provided proper, independent reasons for rejecting these opinions").

**D.     The ALJ failed to make a proper step two determination.**

Disputed Issue One is directed to the ALJ's exclusion of plaintiff's meralgia paresthetica from his step two finding. (See Jt Stip at 3-9.)

Step two of the Commissioner's sequential evaluation process requires the ALJ to determine whether an impairment is severe or not severe. See 20 C.F.R. §§ 404.1520(a), 416.920(a). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the Commissioner's regulations, an impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities." See 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." Basic work activities also include mental activities such as understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. See 20 C.F.R. §§ 404.1521(b), 416.921(b); Social Security Ruling ("SSR") 85-28. The Ninth Circuit has described step two as "a de minimis screening device to dispose of groundless claims." See Smolen, 80 F.3d at 1290; see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).

13

Here, the record reflects that plaintiff alleged meralgia paresthetica as one of his disabling impairments and that physicians repeatedly diagnosed or mentioned his meralgia paresthetica.[3] (See AR 66, 69, 71, 86, 360, 633, 638, 651, 705.) Moreover, Dr. Holstein, a treating neurologist, opined that the meralgia paresthetica caused "some sensory loss on the anterolateral aspect of [plaintiff's] right leg." (See AR 360.) Although the ALJ briefly mentioned plaintiff's meralgia paresthetica in his decision (see AR 37, 38), he excluded the impairment from his step two determination without explanation.

The Court concurs with plaintiff that the ALJ erred by failing to properly consider meralgia paresthetica as part of his step two determination, particularly in light of the treating physician's uncontroverted opinion that the condition resulted in sensory loss. See Ingram v. Colvin, 2014 WL 1247891, at *3-*4 (C.D. Cal. Mar. 24, 2014) (step two determination required revisting where ALJ failed to properly consider claimant's meralgia paresthetica resulting in sensory disturbance); Gonzalez v. Astrue, 2008 WL 4889963, at *4-*5 (E.D. Wash. Nov. 12, 2008) (ALJ erred by failing to articulate legally sufficient reasons for excluding meralgia paresthetica from step two determination); see also Waldon v. Astrue, 2013 WL 2177782, at *9-*10 (S.D. Cal. May 20, 2013) (ALJ failed to properly defer to uncontroverted treating physician's opinion as to claimant's meralgia paresthetica). In other words, the medical evidence did not clearly establish that plaintiff's meralgia paresthetica was a non-severe impairment. See Webb, 433 F.3d at 687 ("[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by the medical evidence.'") (quoting

---

[3] Meralgia paresthetica is a condition characterized by tingling, numbness, and burning pain in the outer thigh. The cause of meralgia paresthetica is compression of the nerve that supplies sensation to the skin surface of the thigh. See http://www.mayoclinic.org/diseases-conditions/meralgia-paresthetica/basics/definition/con-20030852.

Social Security Ruling 85-28).

To the extent that the ALJ implicitly rejected Dr. Holstein's finding of sensory loss in the right leg by determining that plaintiff had an RFC for light work that enabled plaintiff to "stand and or walk for 6 hours in an 8-hour workday," it was incumbent upon the ALJ to provide legally sufficient reasons before doing so. See Lester, 81 F.3d at 830 (an ALJ must provide "specific and legitimate reasons supported by substantial evidence in the record" to reject the opinion of a treating physician, even if contradicted by another physician); see also Lingenfelter v. Astrue, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007) (with respect to the requirements to provide legally sufficient reasons to reject a treating physician's opinion, "an ALJ cannot avoid these requirements simply by not mentioning the treating physician's opinion and making findings contrary to it"). The ALJ did not provide any such reasons here. Moreover, even if the ALJ had found Dr. Holstein's opinion to be ambiguous, it was incumbent upon the ALJ to fulfill his special duty to properly develop the record before implicitly rejecting the opinion and excluding the impairment from his step two determination. See Webb, 433 F.3d at 687 (ALJ had duty to supplement record, to the extent it was incomplete, before rendering non-severity finding at step two).

Accordingly, the Court finds that reversal is warranted based on the ALJ's failure to make a proper step two determination.

## CONCLUSION AND ORDER

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. See, e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister, 888 F.2d at 603; Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). Remand is warranted where additional administrative proceedings could remedy defects in the decision. See, e.g., Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose

would be served by further administrative proceedings, <u>Kornock v. Harris</u>, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, <u>Bilby v. Schweiker</u>, 762 F.2d 716, 719 (9th Cir. 1985).

      The Court has concluded that this is not an instance where no useful purpose would be served by further administrative proceedings; rather, additional administrative proceedings still could remedy the defects in the ALJ's decision.

      Accordingly, IT IS HEREBY ORDERED that, pursuant to sentence four of 42 U.S.C. § 405(g), Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.[4]

DATED:  <u>November 4, 2014</u>

*[signature]*

_____
ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE

---

[4] It is not the Court's intent to limit the scope of the remand.